UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| LA CRESHA WILLIAMS | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 09-cv-968 |
| CITY OF MADISON, et al., | ) | JURY DEMAND |
| Defendants. | ) | |

## ORDER

**HERNDON, Chief Judge:**

Before the Court are the following motions: 1) plaintiff La Cresha Williams' motion for summary judgment (Doc. 37); 2) defendants' (the City of Madison, Lieutenant Steve Shelby, Chief of the Madison Police Department, individually and in his official capacity, and Sergeant J.D. Harris of the Madison Police Department, individually and in his official capacity) counter motion for sanctions (Doc. 38); 3) defendants' motion to strike (Doc. 39); and 4) defendants' motion to bar plaintiff's witnesses (Doc. 40). For the reasons that follow, plaintiff's motion for summary judgment (Doc. 37) is denied, defendants' counter motion for sanctions is denied (Doc. 38), defendants' motion to strike (Doc. 39) is granted in part and denied in part, and defendants' motion to bar plaintiff's witnesses (Doc. 40) is granted.

### I. Background

Without getting too much into the facts, because most of them are in

dispute, the following series of events provides the relevant context for deciding the motions before the Court. On November 19, 2007, plaintiff was stopped by Sergeant J.D. Harris (Officer Harris) of the Madison Police Department for not wearing a seat belt approximately 200 to 300 feet from the Madison Police Department. Soon thereafter, another Madison police officer, Officer Michael Renthe responded to the scene. At some point, the facts of which are heavily in dispute, Officer Harris and plaintiff ended up in a verbal and physical altercation, that resulted in Officer Harris seizing plaintiff. The facts that led up to this point and those that follow are in dispute, but ultimately it resulted in plaintiff being hit by a Taser[1] or "stun gun" fired by Officer Harris.

On November 19, 2009, plaintiff filed a six count complaint, alleging the following four counts against all defendants: 1) a federal claim for excessive force under 42 U.S.C. § 1983; 2) a state law assault and battery claim; 3) a state law unlawful use of excessive force claim; and 4) a state law intentional

---

[1] A Taser gun is an electronic control device "that sends an electric pulse through the victim's body causing disorientation, weakness, and loss of balance." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 859 n.1 (7th Cir. 2010); see generally *60 Minutes: Taser: An officer's weapon of choice* (CBS television broadcast Nov. 13, 2011), *available at* http://www.cbsnews.com/video/watch/?id=7388128n&tag=contentBody;storyMediaBox (discussing the Taser and law enforcement).

infliction of emotional distress claim. Plaintiff further alleged a state law claim for failure to adequately train, instruct, correct, discipline, supervise, and train police officers against the City of Madison, Lieutenant Steve Shelby, and Officer Harris, and spoliation of evidence claim against Officer Harris. The spoliation of evidence claim was dismissed without prejudice at plaintiff's request. (Doc. 47).

On April 19, 2011, plaintiff filed a motion for summary judgment (Doc. 37). Despite filing a six count complaint, plaintiff's motion for summary judgment (Doc. 37) fails to identify each claim or defense on which summary judgment is sought. Rather, plaintiff's motion for summary judgment sets forth a number of disputed facts, many of which defendants claim are irrelevant and inadmissible in this case, and generally claims that Officer Harris had no reasonable cause to believe his action in Tasing[2] plaintiff was justified or warranted. Defendants responded to plaintiff's motion for summary judgment (Doc. 37) by filing a counter motion for sanctions (Doc. 38), a motion to strike (Doc. 39), and motion to bar plaintiff's witnesses (Doc. 40). Because the motion to strike and motion to bar impact the Court's decision on the motion for summary judgment, the Court considers them first.

---

[2] The Court uses the term "Tase" and "Tasing" to indicate that act of being shot with a Taser gun. The term "Tased" and "Tasered" are used interchangeably as the past tense for those verbs.

## II. Motion to Strike

Defendants present three arguments in their motion to strike. First, defendants contend that this Court should strike plaintiff's counts and allegations alleging violations of the Eighth and Fourteenth Amendments because those amendments are inapplicable to excessive force claims. Second, defendants posit that plaintiff's failure to train, supervise, and instruct claims against Officer Harris should be stricken because Officer Harris is not a supervisory official. Third, defendants argue that this Court should strike plaintiff's spoliation of evidence count because plaintiff suffered no damages warranting spoliation of evidence claim. Plaintiff responds to defendants' motion to strike by agreeing that any reference to the Eight Amendment should be stricken, contending that the failure to train, supervise, and instruct claim is not brought against Officer Harris, and noting that the spoliation of evidence claim has been dismissed. Accordingly, defendants' motion is denied as moot with regard to the spoliation of evidence argument and granted in the remainder as plaintiff concedes these arguments. Plaintiff, however, is given leave to amend her complaint to allege whatever constitutional amendment she believes she has a right to sue under and to allege the supervisory personnel she believes is responsible for failing to properly train, supervise, and instruct.

## III. Motion to Bar Plaintiff's Witnesses

In defendants' motion to bar plaintiff's witnesses, defendants contend that the Court should prohibit Janika Love, Jazmine Briggs, Sharilette

McDonald, and Travontrez Brown from testifying and should strike those witnesses because their testimony is irrelevant. Plaintiff seeks to introduce these witnesses testimony to show that Officer Harris has Tasered other individuals in investigatory stops similar to plaintiff's stop. Specifically, plaintiff seeks to offer Travontrez Brown to testify that during an investigatory stop, Officer Harris handcuffed him, took him to another officer's squad car, forced him face first and face down into the squad car, and then repeatedly proceeded to Tase Brown, all because Brown made a statement to another passenger expressing his displeasure with being stopped. Janika Love is being proffered to testify that she was also Tased by Officer Harris after she was handcuffed and placed in the back of his squad car with two other females following a verbal dispute with another female. Jazmine Briggs is being proffered to testify that she saw the other two girls in the back of the squad car with Love Tased repeatedly. Sharilette McDonald is being proffered to testify that she was repeatedly Tased by Officer Harris, causing her to drop her son on the floor and subjecting him to this same Taser shock, after she refused to let officers take her son when she went to the Madison Police Department to file a complaint.

      Defendants argue that plaintiff intends to elicit testimony from the above witnesses pertaining to irrelevant and unrelated arrests. Specifically, defendants contend that in excessive use of force cases, evidence of prior incidents of misconduct involving a police officer is inadmissible. Plaintiff contends that because defendant Harris raised the affirmative defense of self-

defense, evidence of commission of prior crimes or acts of misconduct may be admissible to prove motive, intent, identity, absence of mistake or any material question other than the propensity to commit a crime.

"The Federal Rules of Evidence, not provisions of state law, govern the admissibility of evidence in federal court." *Park v. City of Chi.*, 297 F.3d 606, 611 (7th Cir. 2002); see also *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 943 (7th Cir. 2005) ("Federal courts do, and must, apply both the Federal Rules of Evidence and other evidentiary rulings derived from federal statutes, Supreme Court decisions, or other sources of federal law, in their proceedings."). Despite this, plaintiff cites solely to Illinois state law in support of her position that the evidence at issue should be admitted. While state law may affect relevancy determinations, see *Schrott*, 403 F.3d at 943, that does not take away from the fact that the Federal Rules of Evidence apply in this case, and that under Seventh Circuit precedent, evidence of an officer's intent or motivation is irrelevant to whether he acted objectively reasonable in light of the facts and circumstances confronting him.

The issue under the Fourth Amendment is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him. *Graham v. Connor,* 490 U.S. 386, 397 (1989); *Common v. City of Chi.*, 661 F.3d 940, 2011 U.S. App. LEXIS 21178, at *4 (7th Cir. 2011); *Richman v. Sheahan*, 512 F.3d 876, 882 (7th Cir. 2008); *Soller v. Moore*, 84 F.3d 964, 968 (7th Cir. 1996). The officer's intent or motivation in using force is

irrelevant in a Fourth Amendment case. *Graham,* 490 U.S. at 397; *Richman*, 512 F.3d at 882; *Soller*, 84 F.3d at 968. "This standard requires that a fact finder analyze whether the officer's actions are objectively reasonable in light of the facts and under the circumstances confronting the officer at the time of the incident, without regard to the underlying motive or intent of the officer, and without the benefit of hindsight." *Common,* 2011 U.S. App. LEXIS 18301 at *4. The only thing that matters is whether the officer's force was objectively reasonable. *Richman*, 512 F.3d at 882. "'[E]vidence outside the time frame of the shooting is irrelevant and prejudicial.'" *Common,* 2011 U.S. App. LEXIS 18301 at *5 (quoting *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997)). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight. *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005). The calculus of the reasonableness must take into account that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Id.* Nevertheless, there may be certain circumstances, where evidence outside the officer's knowledge is admissible for certain purposes. See *Common*, 2011 U.S. App. LEXIS 18301 at *6 (citing *Sherrod v. Berry*, 856 F.2d 802, 806 (7th Cir. 1998)).

Here, plaintiff seeks to introduce evidence of prior incidents where Officer Harris allegedly used excessive force by Tasing individuals during the course of his employment as a police officer. Plaintiff agues this evidence

should be admitted to show Officer Harris's intent or motivation. This evidence is inadmissible. The case law is clear that an officer's intent or motivation is irrelevant to the Fourth Amendment's objective reasonableness inquiry. *Graham,* 490 U.S. at 397; *Richman*, 512 F.3d at 882; *Soller*, 84 F.3d at 968.

At issue here is whether Officer Harris's actions were "objectively reasonable" in light of the fact and circumstances confronting him, without regard to his underlying intent or motivation. *Soller,* 84 F.3d at 968. Thus, evidence of Officer Harris's past incidents to prove motive or intent is not admissible here. As the Supreme Court explained in *Graham*, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397. The subjective motivations of individual officers have no bearing on whether a particular seizure is "unreasonable" under the Fourth Amendment. *Id.*

Furthermore, even if this evidence were admissible, the Court finds that the probative value of this evidence is substantially outweighed by other considerations, including unfair prejudice, confusing the issues, and undue delay. See FED. R. EVID. 403; see also *United States v. Smith*, 230 F.3d 300, 308 (7th Cir. 2000) (noting that evidence of specific instances of conduct to prove character has the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time). If the evidence were to be admitted, it may result in an entire replay of each one of these instances, potentially resulting in

a trial within a trial, see *Soller*, 84 F.3d at 968, or may induce the jury to decide the case on an improper basis, *Common*, 2011 U.S. App. LEXIS 18301 at *16. Accordingly, defendants' motion to bar plaintiff's witnesses (Doc. 40) is granted.

### IV. Motion for Summary Judgment

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States,* 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

In excessive force cases, a jury is nearly always required to sift through the disputed factual contentions, drawing inferences therefrom, and as a result, summary judgment should be granted sparingly. *Abdullahi*, 423 F.3d at 773

(quoting *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002)). This is because in excessive-force cases the evidence surrounding the officer's use of force is often susceptible to different interpretations. *Cyrus*, 624 F.3d at 862 (citing *Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009)). The case is no different here.

Clearly summary judgment should not be granted in this case. There are numerous genuine issues of material fact, and plaintiff far from shows that she is entitled to judgment as a matter of law, especially when the evidence in the record is construed in favor of defendants. Indeed, all that is known here is that plaintiff was Tasered. The facts leading up to the incident and the circumstances thereafter are in dispute and must be submitted to the trier of fact. See *Cyrus*, 624 F.3d at 858 (finding that on a Fourth Amendment excessive-force claim, the extent to which the deceased attempted to evade the officers and the actual amount of forced use to bring about the deceased's arrest, including, most importantly, how many times the deceased was Tasered, precluded resolution on summary judgment).

Another problem with plaintiff's motion for summary judgment is that plaintiff fails to identify "each claim or defense - or the part of each claim or defense--on which summary judgment is sought." FED. R. CIV. P. 55(a). The best this Court can tell, plaintiff seems to be arguing that summary judgment should be granted on its § 1983 claim because Officer Harris "had no reasonable cause to believe his action in tasing the [p]laintiff on multiple

occasions was justified or warranted" and because his affirmative defense claim fails as a matter of law. This is simply not the case.

As stated above, the issue under the Fourth Amendment is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him. *Graham,* 490 U.S. at 397. Whether Officer Harris had "evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397. The subjective motivations of individual officers have no bearing on whether a particular seizure is "unreasonable" under the Fourth Amendment. *Id.*

As to plaintiff's argument that summary judgment should be granted to plaintiff because defendants failed to timely disclose the Madison Police Department's Taser usage policy, the Court disagrees. "In admeasuring sanctions for violating the rules of pretrial discovery, as in other areas of the law, the punishment should fit the crime." *Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 752 (7th Cir. 2005). This is apparent by the breadth of the range of sanctions available under Federal Rule of Civil Procedure 37(c). *Id.* Nevertheless, the only sanction plaintiff seeks in this case -- the entry of summary judgment in plaintiff's favor -- is excessive. See, e.g., *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 739 (7th Cir. 1998) ("Depriving the parties of a merits disposition is serious business."); *Schilling v.*

*Walworth Cnty. Park & Planning Comm'n*, 805 F.2d 272, 275 (7th Cir. 1986) ("In the normal course of events, justice is dispensed by the hearing of cases on their merits; only when the interests of justice are best served by dismissal can this harsh sanction be consonant with the role of the courts."). In fact, when dismissing a case as a discovery sanction, the Court must find willfulness, bad faith, or fault. *E360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011) ("[A] showing of willfulness, bad faith, or fault is necessary only when dismissal or default is imposed as a discovery sanction.") (citing *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003)). This Court believes the same standard must be met for granting summary judgment as a discovery sanction, and finds no evidence of willfulness, bad faith, or fault on the part of defendants. Thus, even if plaintiff had proved that defendants violated the discovery rules, the Court would not find it proper to enter summary judgment in favor of the plaintiff. In any event, plaintiff has not clearly established that a discovery rule was violated.

Discovery is an area over which the district court has great authority and discretion. *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 432 (7th Cir. 2000). Federal Rule of Civil Procedure 26(e) provides as follows:

> "A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court." FED. R. CIV. P. 26(e).

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure to was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

Here, plaintiff contends that the City of Madison grossly violated the discovery rules and that it should be sanctioned. The record here, however, establishes that on April 13, 2011, as defense counsel was preparing Steven Shelby, Madison Chief of Police, for his deposition the next day, Shelby first disclosed the Madison Police Department Taser usage policy. Why the policy was not disclosed earlier in response to plaintiff's request for production is not clear, but as soon as defense counsel discovered it, defense counsel supplemented its response with the policy. As a result of this, the parties agreed to continue Shelby's deposition.

Despite plaintiff's argument defendants have violated the discovery rules, it is not clear to the Court that plaintiff attempted to seek appropriate redress from the Magistrate Judge nor has shown any prejudice. While discovery had closed, the record reflects that defense counsel immediately supplemented its response to plaintiff's request for production upon learning of the Taser usage policy. Moreover, even assuming defendants violated Rule 26(e), plaintiff has failed to show how she was harmed thereby. See FED. R. CIV. P. 37(c)(1). The

parties agreed to continue Shelby's deposition so that the parties could adequately prepare, and the parties have not indicated how the Taser usage policy will be used as evidence. While the Court does not condone a litigant withholding an important document for such a long period of time and counsel certainly has an affirmative obligation to make sure his clients understand their obligations under the Court's rules of procedure, it is clear that plaintiff is in no position to cry foul too loudly. In any event, the Court also does not condone waiting until summary judgment stage to complain to the Court about a discovery problem. Thus, plaintiff's motion for summary judgment (Doc. 37) is denied.

## V.  Defendants' Counter Motion for Sanctions

Defendants have also filed a thirty page[3] counter motion for sanctions (Doc. 38), contending that the Court should enter sanctions against plaintiff due to a continuous pattern of discovery abuse by plaintiff and her counsel in this case. Specifically, defendants allege that the Court should enter sanctions for

---

[3]The Court notes that briefs should be no longer than 20 double-spaced typewritten pages in 12 point font. SDIL-LR 7.1(d). This violation of the local rules would be reason enough to strike or deny defendants' counter motion for sanctions. See *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Koszola v. Bd. of Educ. of the City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004).

the following reasons: 1) "Plaintiff failed to properly disclose the identity of witnesses, conversations she and her counsel had with witnesses, and witness statements relevant to this lawsuit"; 2) "Plaintiff failed to disclose photographs relevant to this lawsuit, refused to produce those photographs despite defense counsel's numerous requests, and finally disclosed poor-quality versions of those photographs five days before the discovery deadline and after the deposition of the person taking those photographs was completed"; 3) "Plaintiff's counsel repeatedly ignored defense counsel's request to inspect the sweatshirt worn by [p]laintiff at the time of her arrest (which allegedly contained blood and holes from Taser prongs) and ultimately represented that the shirt was lost while [p]laintiff received medical treatment on the date of her arrest, despite testimony contradicting [p]laintiff's counsel's representation"; 4) "Plaintiff failed to truthfully respond to written discovery requests"; and 5) "Plaintiff's counsel improperly attempted to elicit expert testimony from Dr. Jay Liss."  As a result of plaintiff's alleged discovery abuses, defendants seek fourteen sanctions from the Court, ranging from striking evidence, to the payment of expenses, including attorney fees, to the right to inform the jury of the plaintiff's failure, to dismissing this action with prejudice.  Plaintiff appears to dispute that it has violated any discovery rules, contending 1) that plaintiff did properly disclose Janika Love, Jazmine Briggs, Sharilette McDonald, Travontrez Brown, and Carolyne Wilson; 2) that upon discovering the photographs taken by Carolyn Wilson, plaintiff immediately provided them to

Page 15 of 18

opposing counsel once they were located; 3) that plaintiff does not have the sweatshirt worn by plaintiff at the time of her arrest; 4) that plaintiff simply erred in her written response to the discovery requests and properly disclosed her arrests in her deposition; and 5) that plaintiff properly disclosed Dr. Liss as a treating physician for plaintiff.

As mentioned above, Federal Rule of Civil Procedure 37, specifically Rule 37(b)(2)(A), grants the district court with the power to impose sanctions for violations of discovery orders. FED. R. CIV. P. 37(b)(2)(A). The district court has "'wide latitude in fashioning appropriate sanctions.'" *E360 Insight, Inc.*, 658 F.3d at 642 (quoting *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999)).

Here, discovery was originally scheduled to be completed by February 4, 2011, and on June 21, 2010, Magistrate Judge Wilkerson instructed the parties on how to submit discovery disputes (Doc. 31). Specifically, Magistrate Judge Wilkerson ordered the parties to contact his chambers to schedule a telephonic conference call if discovery disputes could not be resolved through informal means. He noted, that "[w]ritten motions to compel or legal memoranda will <u>not</u> be accepted unless specifically requested by the Court." On January 28, 2011, defendants filed a motion to amended the discovery deadline (Doc. 33), and on February 2, 2011, Magistrate Judge Wilkerson granted that motion (Doc. 34), extending the discovery deadline until April 4, 2011 (Doc. 35).

Here, there is no evidence in the record to suggest that defendants

complied with Magistrate Judge Wilkerson's order regarding discovery disputes. Instead, the parties waited until the dispositive motions were due and raised issues that perhaps could have been resolved had they followed Magistrate Judge Wilkerson's order. Both parties are to blame for this failure, and the Court refuses to sanction either party for disputes that should have been resolved either amicably between the parties or before Magistrate Judge Wilkerson. See Fed. R. Civ. P. 72. Furthermore, it appears that part of the relief requested by defendants has been rendered moot by this Court's decision on defendant's motion to bar, that defendants now have all the evidence sought that plaintiff possesses, and that the issues regarding whether plaintiff told the truth go to her credibility, which can be addressed at trial. As to defendants argument that plaintiff's counsel improperly attempted to obtain expert witness testimony from Dr. Liss, a non-expert witness, plaintiff contends that Dr. Liss is a treating physician who can offer opinions made during his treatment of plaintiff. For the sake of preventing a claim of error, plaintiff is ordered to identify whether Dr. Liss may be used at trial to present evidence under Federal Rule of Evidence 702, 703, or 705 within fourteen days of the date of this Order. See Fed. R. Civ. P. 26(a)(2)(A). If Dr. Liss is identified as an expert witness, plaintiff should comply with Rule 26(a)(2)(C) within that same fourteen day time period, and defendants will have thirty days thereafter to disclose a rebuttal expert. Accordingly, defendants' counter motion for sanctions (Doc. 38) is denied.

## VI. Conclusion

For the reasons stated above, plaintiff's motion for summary judgment (Doc. 37) is denied, defendants' counter motion for sanctions is denied (Doc. 38), defendants' motion to strike (Doc. 39) is granted in part and denied in part, and defendants' motion to bar plaintiff's witnesses (Doc. 40) is granted. Plaintiff is given leave to amend her complaint to allege whatever constitutional amendment she believes she has a right to sue under and to allege the supervisory personnel she believes is responsible for failing to properly train, supervise, and instruct. The amendment should be filed within fourteen days of the date of this Order along with plaintiff's disclosure of whether Dr. Liss may provide any expert testimony in compliance with Rule 26(a)(2)(C).

**IT IS SO ORDERED.**

Signed this 13th day of January, 2012.

David R. Herndon
2012.01.13
12:52:03 -06'00'

**Chief Judge**
**United States District Court**